Troy Y. Nelson, ISB #5851
NELSON & ASSOCIATES, PLLC
505 W. Riverside Avenue, Suite 579
Spokane, WA 99201
Telephone: (509) 868-1316
Email: troy@tynelsonlaw.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MARK and CLARISSA MEAD, individually and in their marital community; GERALD and CAROLE GRIFFIN, individually and in their marital community; VINCENT and WENDY POMPONI, individually and in their marital community; BORIS and RACHAEL VRBETA, individually; and THE ESTATE OF BORIS VRBETA,<br><br>Plaintiffs,<br><br>VS.<br><br>STATE OF IDAHO; BONNER COUNTY; DAN MCDONALD, individually and in his Representative capacity; and JEFF CONNOLLY, individually and in his representative capacity,<br><br>Defendants. | CASE NO.  2:18-cv-00527-CWD<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

Come now Plaintiffs, and by way of Complaint against Defendants allege as

follows:

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 1

## I. <u>PARTIES</u>

1.      Plaintiffs are residents of Idaho, except Vincent and Wendy Pomponi, who are residents of Washington State.

2.      In compliance with Title 6, Chapter 9, Idaho Code, the undersigned herby presents suit against the State of Idaho for damages arising out of the occurrence detailed below.

3.      Defendant Bonner County is a political subdivision of Idaho.

4.      Bonner County, as a political subdivision of Idaho, is subject to federal or state jurisdiction and is not immune to suit based on its conduct in this matter.

5.      The individual Defendants were, at all times pertinent to this action, Commissioners of Bonner County.

6.      Bonner county is vicariously liable for all acts and omissions of the individual Defendants and/or through agency/acting in concert and/or partnership.

7.      The State of Idaho, Dan McDonald, Jeff Connolly, and Bonner County are joint actors in regard to the acts and omissions listed below.

8.      Jurisdiction is appropriate in this Court under 28 U.S.C. § 1391(b).

9.      Plaintiffs seek recovery under 42 U.S.C. § 1983 and thus original federal subject matter jurisdiction is present in this matter.

## II.   <u>JURISDICTION AND VENUE</u>

11.      The Court has federal-question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the suit arises under federal law, and supplemental

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 2

jurisdiction over Plaintiffs' Idaho state law claims under 28 U.S.C. § 1367(a)

Plaintiffs exhausted administrative remedies. Plaintiffs served a Notice of Tort

Claim against all Defendants.

12.     The United States District Court for Idaho has personal jurisdiction

over the parties and subject matter jurisdiction for the claims in this complaint

pursuant to 28 U.S.C. § 1367(a).

13.     Plaintiffs have complied with all legal pre-requisites in the bringing of

the action.

### III. FACTS

14.     Upon information and belief in November of 1916 James Myers

acquired a homestead in Sections 14 and 23 of township 58 N Range 4 W. In 1915

Edward Gilbert applied for and was living on and improving the land as per

requirements of the Homestead Act of 1862. Mr. Gilbert received the Patent on

parts of section 13 and section 14 of township 58 N Range 4 W in January of

1919. The State of Idaho acquired the remaining 492 acres of section 14 in 1917

from the United States.

15.     In 1919, Edward Gilbert and James Myers homesteaded the

remaining acreage in section 14 and acquired those lands from the United States

(**Exhibits 1 and 2**).  Plaintiffs' land was subsequently purchased from these

lands.

16.     In 1934, Gilbert granted the State of Idaho an easement for the

construction and maintenance of a public road. The road was called "East River

Road Project".  **Exhibit 3**.

17.     In 1990, after a series of transfers, the property at the heart of this dispute was transferred to Stephens, subject to Idaho's easement. **Exhibit 4**.

18.     From at least 1990 to 1998, Defendants Bonner County and the State of Idaho maintained the East River Road, now known as East River Spur Road, pursuant to the road construction and maintenance easement. This maintenance included the construction and maintenance of a bridge over the North Fork of the East River, which is part of the road and easement. The maintenance also included plowing the road during the winter to allow school bus passage to the property owners on the other side of the bridge. For those property owners on the other side of the bridge, that bridge constituted the only reasonable year-round access to the properties of the Plaintiffs herein.

19.     The Idaho Department of Transportation records reveal that the North Fork of the East River bridge was inspected as early as 1979.  On November 12, 1979, JUB Engineers, Inc. provided a Bridge Inspection Field Report executed by Bryce Grachal and Joseph Haynes. **Exhibit 5.**

20.     And September 2, 1988, Bonner County threatened it would no longer maintain the East River Spur Road.

21.      In 1998, Bonner County again threatened to stop maintaining the bridge over the North Fork of the East River which is and was part of the East River Spur Road. Despite this threat, Bonner County continued maintaining the road. **Exhibit 6**.

22.     In 1998 and 1999, Bonner County replaced the bridge deck because of its maintenance obligations under the easement. Following the replacement of the bridge deck, the NBI rating rose from a 3 to a 9.

23.     In 1998, plaintiffs Gilbert Griffin purchased their subject property in Bonner County Idaho. In 1999, Boris and Rachel Vrbeta purchased their property in Bonner County Idaho.

24.     Plaintiffs' Mead and Pomponi likewise also acquired property on the other side of the East River Spur Road bridge spanning the North Fork of the East River.  All these property transfers were made during the time Bonner County and/or the State of Idaho were maintaining the East River Spur Road as required under the easement transfer.

25.     In 2009, the State of Idaho negligently harvested trees off its land above the East River Spur Road.  In 2012 and 2015, as a result of this negligence, a land slide or slump occurred obstructing the road.  The State of Idaho attempted to repair the slump days after it occurred.

26.     Between 1998 and 2013, the Defendants intentionally and/or negligently failed to maintain the East River Spur Road, allowing the bridge rating to drop from a 9 to a 2. **Exhibit 7**.

27.     In 2015, the State of Idaho notified Plaintiffs that it was going to stop maintaining the road including the bridge because of rapid deterioration, when in fact the bridge had been deteriorating under the watch of the Defendants for almost three decades.  **Exhibit 8**.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 5

28.     In 2016, the State of Idaho offered to Bonner County the East Spur River Road easement to Bonner County for $3,900. **Exhibit 9**.

29.     On September 29, 2016, Bonner County elected to purchase the easement and acknowledged that the bridge replacement costs came along with the easement and was estimated at that time to be approximately $50,000. **Exhibit 10**.

30.     October 25, 2016, the State of Idaho officially transferred the East River Spur Road easement to Bonner County which required Bonner County to "perform all road construction, reconstruction and maintenance work in the easement area in compliance with all applicable federal, state and local laws and rules, as they exist from time to time form of this easement." the agreement also required Bonner County to "keep easement area and all road improvements, including [the] bridge… in good repair…[and] at its own expense." **Exhibit 11**.

31.      The State of Idaho subsequently acknowledged and reaffirmed Bonner County's obligation to provide Plaintiffs herein with continued access to their properties. **Exhibit 12**.

32.     On June 13, 2017, Bonner County unilaterally decided it was going to discontinue maintenance of the subject easement area for budgetary purpose. **Exhibit 13**.

33.     The State of Idaho responded to Bonner County's unilateral decision to terminate the easement by disagreeing with the decision and stating the baseis for its disagreement with the County's proposed action. **Exhibit 14**.

34.     Among other things, the State of Idaho took the position that the easement requires ordinary and necessary expenses for the maintenance of the easement.  **Exhibit 14**.

35.     On April 26, 2017, Bonner County believed to cost to repair the bridge was now $70,000.00. **Exhibit 15**.

36.     Instead of abiding by the contract, Bonner County chose to do nothing, and the bridge deteriorated to the point where the State Highway Department instructed Bonner County to close the bridge for safety reasons on August 10, 2017. **Exhibit 16**.

37.     Bonner County presented Plaintiffs with a memorandum of agreement requiring Plaintiffs to execute a new easement and be responsible for maintaining the easement and releasing Bonner County of future liability. **Exhibit 17**. Plaintiffs refused to execute this agreement illegally terminating Bonner county's obligations to maintain the road, including the bridge, at its expense.

38.     Subsequently, Bonner County unilaterally, and against the advice of the State of Idaho, passed two resolutions on August 15th, 2017 closing the bridge and declaring the East River Spur Road as an unmaintained right of way. **Exhibits 18 and 19**.

39.      On August 17, 2017, defendant Dan McDonald arrived at the bridge along with 3 sheriff deputies an ordered the bridge to be closed. Jersey barriers were erected physically preventing the residents on the other side of the bridge year-round access to their property.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 7

40.     On August 17, 2017, Plaintiffs Mead immediately lost their chiropractic patients because patients could no longer access his office. The rental income from Mead's office was lost to Plaintiffs Vrbeta.

41.     Plaintiffs protested the bridge closure in writing and verbally to no avail. As the 2017/2018 winter set in, the Plaintiffs living on the other side of the bridge were landlocked. Prior to winter it was suggested by the State of Idaho that the Plaintiffs park one car on each side of the bridge using one car to get to the bridge, then walking across the bridge, and using the other car. This suggestion was physically impossible.

42.     In February of 2002 Boris Vrbeta had a medical emergency and because the bridge was closed, the emergency medical technicians had to park the ambulance approximately 2.2 miles away and used snowmobiles to access the Vrbeta property. The decision was made to medically evacuate Boris but because the bridge was not rated for the weight of the ambulance, they had to do it via snowmobile. The EMTs had no choice but to strap Boris to a sled that was to be pulled behind the snowmobile and pulled him the 2.2 miles out over the snow to the ambulance. It took nearly 5 hours to get Boris to the hospital.

43.     Boris was ultimately diagnosed with pneumonia. Although the pneumonia was not caused by the road closure or the subsequent snowmobile sled evacuation, Boris' condition was aggravated, elevated and made worse as a consequence of the foreseeable need to be evacuated.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 8

44.     Boris ultimately succumbed to pneumonia. The snowmobile sled evacuation caused by the intentional acts and/or negligence of the defendants aggravated his pneumonia and was a substantial factor in Boris's death.

45.     On February 5, 2018, the State of Idaho reaffirmed its commitment to assist Bonner County with maintaining the bridge for the benefit of Plaintiffs.

46.     On March 9, 2018, the State of Idaho made an offer to Plaintiffs to either permanently or temporarily obtain ownership over the easement.  **Exhibit 20**.  The Plaintiffs rejected this offer.

47.     After rejecting the offer to rent or buy the easement, the State of Idaho elected to provide Plaintiffs with a license to use the easement. **Exhibit 21**.

48.     These licenses were provided to Plaintiffs in 2018. **Exhibits 22-25**. These licenses are non-transferable to subsequent buyers.

49.     Plaintiffs attach the tort claim of Vrbeta as **Exhibit 26** and incorporate all facts, causes of action, and exhibits to that tort claim as if set forth fully verbatim herein.

50.     Plaintiff Boris Vrbeta suffered severe injury due to the actions and inactions of Defendants.  Plaintiffs Vrbeta also suffered wrongful death damages.

51.     Plaintiffs attach the tort claim of Vincent and Wendy Pomponi as **Exhibit 27** and incorporate all facts, causes of action, and exhibits to that tort claim as if set forth fully verbatim herein.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 9

52.     The Pomponi's and Meads suffered loss of use of their home, weather damage, lack of access to property, due to physical and regulatory takings.

53.     The harm to the marketability to the Pomponi's property is permanent.

54.     Plaintiffs attach the tort claim of Gerald and Carole Griffin as **Exhibit 28** and incorporate all facts, causes of action, and exhibits to that tort claim as if set forth fully verbatim herein.

55.     The Meads suffered injury and damage to Dr. Mark Mead's chiropractic practice.

56.     Plaintiffs attach the tort claim of Mark and Clarissa Mead as **Exhibit 29** and incorporate all the facts, causes of action, and exhibits to that tort claim as it fully set forth verbatim herein.

## IV.  CLAIMS FOR RELIEF

### COUNT ONE:

### VIOLATION OF THE SUBSTANTIVE AND PROCEDURAL DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, BY AND THROUGH 42 U.S.C. § 1983

57.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 56 as if set forth fully verbatim herein.

58.     The Fourteenth Amendment to the United States Constitution guarantees that no "State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const, amend. XIV, § 1, cl. 3.

59.     Defendants of this 42 U.S.C. §1983 claim are state/government actors and as such are required to provide due process of law when depriving citizens of their property right to employment.

60.     Bonner County, Dan McDonald, and Jeff Connolly, as set out above and below in this Complaint, committed numerous acts under color of state law in a manner that violated the rights of the Plaintiffs under federal statutes and the United States Constitution.

61.     The deprivations of Plaintiffs' federal rights by Defendants were made intentionally, recklessly, and/or with deliberate indifference to Plaintiffs' federal rights and proximately caused Plaintiffs damages in an amount to be proven at trial.

62.     The rights granted to Plaintiffs by Defendants' personnel policies, procedures, and contracts and by federal and state laws and policies provided Plaintiffs with a property interest. Said property interest is protected by the Fifth and Fourteenth Amendments to the United States Constitution.

63.     42 U.S.C. § 1983 prohibits a governmental entity, such as the Defendants, from acting under color of law to deprive the Plaintiffs of any rights, privileges, or immunities secured by the United States Constitution and federal law.

64.     To prevail on a § 1983 claim, the Plaintiffs must prove two essential elements: (1) they were deprived of a right secured by the Constitution or laws of the United States and (2) the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 11

L.Ed.2d 40(1988); Redman v. County of San Diego, 942 F.2d 1435, 1439 (9th

Cir. 1991). See also 42 U.S.C. § 1983.

65.      "A person 'subjects' another to the deprivation of a constitutional

right, within the meaning of § 1983, if he does an affirmative act, participates in

another's affirmative acts or omits to perform an act which he is legally required

to do that causes the deprivation of which complaint is made." Johnson v. Duffy,

588 F.2d 740, 743 (9th Cir. 1978).

66.      The Fourteenth Amendment mandates that a governmental entity

may not "deny to any person within its jurisdiction the equal protection of the

laws." U.S. Const. amend. XIV. "The purpose of this clause is 'to secure every

person within the State's jurisdiction against intentional and arbitrary

discrimination, whether occasioned by express terms of a statute or by its

improper execution through duly constituted agents." PG Pub. Co. v. Aichele,

705 F.3d 91, 114 (3d Cir. 2013) (citing Village of Willowbrook v. Olech, 528

U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).

67.      In a 42 U.S.C. § 1983 claim for deprivation of constitutional rights,

claimant is entitled to seek nominal damages, even in the absence of specific

injury: "as distinguished from punitive and compensatory damages, nominal

damages are awarded to vindicate rights, the infringement of which has not

caused actual, provable injury." Cummings v. Connell, 402 F.3d 936 (9th Cir.

2005).

68.      Further, "Compensatory damages may include not only out-of-pocket

loss, and other monetary harms, but also such injuries as 'impairment of

reputation..., personal humiliation, and mental anguish and suffering." <u>Memphis Community School Dist. v. Stachura</u>, 477 U.S. 299, 306 (quoting <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 350 (1974)).

69.      Moreover, punitive damages are available even in the absence of compensatory damages, if the requisite standard for punitive damages is met. See e.g. <u>Erwin v. Cty. Of Manitowoc</u>, 872 F.2d 1292 (7th Cir. 1989); <u>Sahagian v. Dickey</u>, 827 F.2d 90 (7th Cir. 1987). Punitive damages can be awarded whether jury has awarded no compensatory or at least nominal damages to a plaintiff. <u>Erwin</u>, 872 F.2d at 1299. Punitive damages are applicable even in the absence of actual damages, <u>Sahagjan</u>, 827 F.2d at 100. Although state law may not allow punitive damages without a compensatory award, under federal law, when a jury finds a constitutional violation under a § 1983 claim, it may award punitive damages even when it does not award compensatory damages. <u>Erwin</u>, 872 F.2d at 1299. The scope of punitive damages in § 1983 actions is governed by the "federal common law of damages" which imposes uniformity when enforcing the Civil Rights Acts. Id. (citing <u>Lenard v. Argento</u>, 699 F.2d 874, 897 (7th Cir. 1983) and <u>Basista v. Weir</u>, 340 F.2d 74, 87 (3d Cir. 1965)).

70.      To bring a cause of action in federal court the plaintiff must only establish that there is a "threatened or actual injury resulting from the putatively illegal action...." <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975), quoting <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 617 (1973).

## COUNT TWO:

## DAMAGES FOR JUST COMPENSATION UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION, BY AND THROUGH 42 U.S.C. § 1983

71.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 70 as if set forth fully verbatim herein.

72.     The just compensation clause of the Fifth Amendment of the United States constitution simultaneously confirms the government's authority to appropriate private property and restricts that power to appropriation for public use for which just compensation must be paid.

73.     A total taking may entail physical occupation of private property by a governmental entity or a regulation that, while not physically invasive, deprives the owner of all beneficial use of his property. In the case of physical the just compensation mandate entitles a condemnee to economic renumeration for the value of the property taken by the state. The fair market value standard for compensation ensures that the property owner is made whole that his economic position prior to the taking equals his status thereafter.

74.     The same is true in the event of a partial taking. A land owner is entitled to reimbursement for the net damage is to his remainder property. In addition to the fair market value of the independent parcel taken. This inclusion of this value in the just compensation calculation for condemnees in partial taking cases was meant to ensure that property owners are paid for all that is taken from them in the event that a governmental entity exercises its eminent domain power.  Just compensation requires that an owner of property taken

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 14

should be paid for what was taken from him. It deals with persons, not with tracks of land. The question is, what has the owner lost?, not what has the taker gained?

75.    Here there is a duty under contract for Bonner County to maintain the bridge and roadway at its expense. Its failure to do so and the subsequent closure and restrictions to said bridge have deprived Plaintiffs of the full use of their properties.

76.    Further, there is an easement appurtenance to Plaintiffs' properties that stems from the Land Patents of 1916 and 1919 and was ratified by the 1934 easement Griffins gave to the state of Idaho. As evidenced by the deeds in the chain of title as well as the documents provided by Bonner County on April 11, 2018 at the commissioners public meeting in Priest River, the County became the owner of the road, either by agreement with the State or by transfer from the State to the County. Otherwise, the County commissioners, in 1998, would not have had standing to the declare the road "unmaintained."

77.    As a consequence of the closure of the bridge, the weight restrictions placed on it, and the reduction of the right to use the easement to a life term license has diminished the value of Plaintiffs' property in an amount to be proven at trial.

78.    Defendants of this 42 U.S.C. §1983 are state/government actors and as such are required to provide due process of law when depriving citizens of their property right to employment.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 15

79.     Bonner County, Dan McDonald, and Jeff Connolly, as set out above and below in this Complaint, committed numerous acts under color of state law in a manner that violated the rights of the Plaintiff under federal statutes and the United States Constitution.

80.     The deprivations of Plaintiffs' federal rights by Defendants were made intentionally, recklessly, and/or with deliberate indifference to Plaintiffs' federal rights and proximately caused Plaintiffs damages in an amount to be proven at trial.

81.     The rights granted to Plaintiffs by Defendants' personnel policies, procedures, and contracts and by federal and state laws and policies provided Plaintiffs with a property interest. Said property interest is protected by the Fourteenth Amendment to the United States Constitution.

82.     42 U.S.C. § 1983 prohibits a governmental entity, such as the Defendants, from acting under color of law to deprive the Plaintiffs of any rights, privileges, or immunities secured by the United States Constitution and federal law.

83.     To prevail on a § 1983 claim, the Plaintiffs must prove two essential elements: (1) they were deprived of a right secured by the Constitution or laws of the United States and (2) the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40(1988); Redman v. County of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991). See also 42 U.S.C. § 1983.

## COUNT THREE:

## PHYSICAL AND REGULATORY TAKINGS

84.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 83 as if set forth fully verbatim herein.

85.     The State of Idaho and Bonner County's actions detailed in Exhibits 1-29 constitute physical and regulatory takings in violation of the United States and Idaho Constitutions, particularly, but not limited to 1) Idaho Constitution Article 1, Section 1, Article 1 Section 14, Article XVIII, Section 11, and Article XXI Section 20 and 2) the 14th Amendment of the United States and substantive due process under *Bivens*.

## COUNT FOUR:

## BREACH OF CONTRACT/THIRD-PARTY BENEFICIARY

86.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 85 as if set forth fully verbatim herein.

87.     Plaintiffs assert breach of contract against the State of Idaho, Bonner County, and individual Defendants.

88.     Plaintiffs were an intended and foreseeable third-party beneficiary of the contracts and agreement reached between the State, County, and individual actors as detailed in attachments incorporated herein to this Complaint.

89.     Plaintiffs seek specific performance of all contracts to restore the functioning of the roadway.

## COUNT FIVE:

## NEGLIGENCE/NEGLIGENT SUPERVISION

90.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 89 as if set forth fully verbatim herein.

91.    The Defendants, in the alternative, acted negligently by breaching a duty which in turn caused harm to Plaintiffs, individually and to their real property, by their actions detailed in Exhibits 1-29 attached to this Complaint.

## COUNT SIX:

## PHYSICAL INJURY AND WRONGFUL DEATH

92.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 57 as if set forth fully verbatim herein.

93.    As a direct consequence of the actions and inactions of the defendants, jointly, severally and in concert, the closure and/or weight restrictions placed on the bridge created a foreseeable hazardous situation because emergency services vehicle could no longer cross the bridge.

94.    Plaintiffs Vrbeta suffered physical and emotional damage and loss when Mr. Vrbeta became ill and needed to be evacuated from his property.

95.    Mrs. Vrbeta is the heir of Mr. Vrbeta.

96.    Instead of being able to be evacuated by ambulance, the actions and inactions caused the emergency personnel to carry Mr. Vrbeta from his property by snowmobile sled which further exacerbated his physical condition which was a substantial factor in causing his death.

97.    Defendants negligence was a proximate cause of Mr. Vrbeta's death and Mrs. Vrbeta's loss of consortium.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 18

98.     Plaintiffs' allege they have been damaged because the death of Mr. Vrbeta was caused by the collective negligence of the defendants and Plaintiffs' Vrbeta seek all damages allowable under Idaho Code 5-311.

## V.  PRAYER FOR RELIEF

Plaintiffs respectfully pray that this Honorable Court enter and Order granting Plaintiffs all remedies available by law, including but not limited to an award of:

(a)     pecuniary losses suffered as a result of the wrongful acts of the Defendants, to include but not limited to property value losses, personal injuries, wrongful death, bridge repair, replacement, lost profits, lost wages, loss of use of property, declaratory relief, pre-judgment and post judgment interest and actual personal and real property damages;

(b)     compensatory damages suffered by Plaintiffs as a result of retaliation as well as punitive damages to the extent allowed under the law;

(c)     costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon;

(d)     Plaintiffs seek specific performance of all contracts to restore the functioning of the roadway;

(e)     all other damages allowed in law or in equity; and

(f)     such other and further relief as the Court deems just or equitable.

## JURY DEMAND

Plaintiffs, by and through their attorney, Troy Y. Nelson of Nelson & Associates, PLLC, hereby requests that this case be tried to a jury of twelve persons.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 19

DATED this 18th day of March, 2019.

NELSON & ASSOCIATES, PLLC

By:   s/ Troy Y. Nelson
Troy Nelson, ISB No. 5851
Attorneys for Plaintiffs
Nelson & Associates, PLLC
505 W. Riverside Avenue, Suite 579
Spokane, WA 99201
509-868-1316
Fax: 509-252-5002

FIRST AMENDED COMPLAINT FOR DAMAGES AND
JURY DEMAND - 20